IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

DOROTHY JOHNSON,                :
                                :
    Plaintiff,                  :
                                :
vs.                             :
                                :   CIVIL ACTION 16-0232-M
CAROLYN W. COLVIN,              :
Social Security Commissioner,   :
                                :
    Defendant.                  :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling denying claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 16). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 22). Oral argument was waived in this action (Doc. 21). After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further administrative actions not inconsistent with the Orders of this Court.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and

1

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Johnson was forty-eight years old, had completed high school (Tr. 48-50), and had previous work experience as a cafeteria worker, housekeeper, and fish grader (Doc. 15). Plaintiff alleges disability due to mild mental retardation, back pain, and obesity (Doc. 15).

The Plaintiff applied for disability insurance and SSI on November 12, 2012, asserting a disability onset date eleven days earlier (Tr. 29, 192-201). An Administrative Law Judge (ALJ) denied benefits, determining that Johnson was capable of performing her past relevant work (Tr. 29-38). Plaintiff requested review of the hearing decision (Tr. 19-22), but the Appeals Council denied it (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Johnson alleges that: (1) She meets the requirements of Listing 12.05C;

2

(2) the ALJ improperly rejected the opinions of her treating physician; (3) the ALJ improperly rejected the conclusions of an examining psychologist; and (4) the ALJ did not fully and fairly develop the record (Doc. 16).  Defendant has responded to—and denies—these claims (Doc. 17).  The Court's summary of the record evidence follows.[1]

On July 6, 2011, Psychologist Donald W. Blanton evaluated Johnson who walked slowly with the aid of a cane; thoughts and conversation were logical and associations were intact (Tr. 320-24).  Affect was flat, but appropriate; she was depressed and had low energy.  No psychomotor retardation or agitation was noted; she admitted to auditory hallucinations.  Insight was limited and judgment was considered fair.  Johnson stated that she did light housework and cooked light meals; though she thought that she could shop and handle money, a family member did those things for her.  Plaintiff took the Wechsler Adult Intelligence Scale-IV (hereinafter *WAIS-IV*) test and scored a verbal comprehension of 61, a perceptual reasoning score of 68, a working memory score of 65, a processing speed score of 71, and a Full Scale IQ score of 62, placing her in the mild range of mental retardation; Blanton thought the scores were valid as Johnson had put forth good effort.  On the Wide-Range Achievement Test (Revised III), Plaintiff scored a third-grade

---

[1] The Court will not summarize evidence that pre-dates Johnson's asserted onset date by more than a year unless it specifically relates to one of her claims.

3

level in reading, a fourth-grade level in spelling, and a second-grade level in arithmetic.  The Beck Depression Inventory-II indicated moderate depression.  The Psychologist's diagnostic impression was as follows:  1) anxiety/depression due to chronic pain and illness; 2) history of grief reaction with psychosis; and 3) mild mental retardation.  Blanton indicated that he thought Johnson was markedly limited in her ability to do the following:  understand, remember, and use judgment in carrying out detailed or complex instructions; respond to customary work pressure; and maintain attention and concentration and pace for at least two hours.  The Psychologist opined that Plaintiff's mental retardation was life-long; he indicated that she had demonstrated deficits in adaptive functioning due to mental retardation, prior to the age of 22, in communication, work, health safety, and functional academic skills.  Blanton encouraged her to seek mental health treatment.

On September 11, 2011, Plaintiff was treated at Hale County Hospital for plantar fasciitis in the right foot; she was given a shot of Decadron[2] and encouraged to stretch daily (Tr. 354-62).

On October 10, 2012, Johnson was examined by Dr. Perry Timberlake with complaints of dizziness, back pain, headache, and left breast pain (Tr. 364-65).  At the height of five-foot,

---

[2]**Error! Main Document Only.***Decadron* is a corticosteroid used for, among other things, the treatment of rheumatic disorders.  *Physician's Desk Reference* 1635-38 (52nd ed. 1998).

three and one-half inches, she weighed 202 pounds; this body mass index of 35 is defined as severely obese.[3]  The Doctor prescribed Lortab,[4] Amitriptyline,[5] and Atenolol.[6]  A mammogram revealed benign fibroid tissue (Tr. 393).

On January 28, 2013, Psychologist Blanton examined Plaintiff for complaints of headaches, hip and back pain, and depression; he noted that she was restless, sat awkwardly, and appeared to be in pain (Tr. 367-69).  Thoughts and conversation were logical while associations were intact with no confusion; affect was flat, but appropriate.  Johnson was depressed and cried for no apparent reason; she reported poor sleep and appetite and low energy.  Plaintiff was oriented in four spheres, but obsessed with her pain; Blanton referenced his prior records and indicated that she appeared mildly mentally retarded at this examination.  Johnson's memory was consistent with her intellect, her insight was limited, and her judgment was fair for work and financial decisions.  Plaintiff reported that she could wash some clothes, make a sandwich, had a driver's license, shop, and handle her own money, though family members did most of these things for her.  Blanton diagnosed

---

[3] *See* http://www.bdaweightwise.com/lose/lose_bmi.html
[4] **Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).
[5] **Error! Main Document Only.***Amitriptyline*, marketed as *Elavil*, is used to treat the symptoms of depression.  *Physician's Desk Reference* 3163 (52nd ed. 1998).
[6] *Atenolol* is used to treat angina and hypertension.  *See* https://www.drugs.com/atenolol.html

significant depression, likely due to chronic pain, and mild mental retardation and encouraged her to get mental health care.

On March 5, 2013, Dr. Judy Cooke Travis evaluated Johnson who complained of headaches, back problems, dizziness, and leg pain; her weight was 210 and her blood pressure was 130/80 (Tr. 371-75). Plaintiff had decreased range of motion (hereinafter *ROM*) in her neck, back, and spine though there was no spasms, deformity, or tenderness; she could not squat. Johnson had normal gait, without assistance; she had 5/5 motor strength and regular examinations in all extremities. Dr. Travis's assessment was low back pain and cervical strain, both of which could be related to a degenerative disc; she also had tension headaches, insomnia, and vertigo.

On May 15, 2013, Plaintiff complained of lower back pain radiating into the left leg, exacerbated by thirty minutes of standing; Dr. Timberlake noted lumbar spine tenderness and a history of migraines, lumbar disc disease, and neuropathy (Tr. 388-89). He re-prescribed medications as before and stated that Johnson was "completely and totally disabled to do gainful work now or in [the] future" (Tr. 389). On September 24, Plaintiff complained of moderate right leg pain that was interfering with daily activities; she could stand only twenty minutes (Tr. 386-87). Timberlake also noted low back pain and gave her Lyrica[7]

---

[7] *Lyrica* is used for the management of neuropathic pain. **Error!**

6

samples. On May 27, 2014, Johnson complained of headaches, lower back pain, radiating into the right leg, and worsening depression; the Doctor noted that the lumbosacral area and right leg were quite tender and prescribed Norco[8] and Effexor[9] in addition to previously prescribed drugs (Tr. 381-82). On August 5, Dr. Timberlake completed a physical medical source statement, indicating that Plaintiff was capable of sitting for two and standing or walking for one hour during an eight-hour day; she could lift and carry five pounds occasionally (Tr. 398). He noted that she did not require an assistive walking device and there was no need to avoid extreme temperatures, dust, fumes, gasses, humidity, or other environmental pollutants; she could engage in fine and gross manipulation, operate motor vehicles, and work with or around hazardous machinery occasionally, use arm or leg controls and climb only rarely, but could never bend, stoop, or reach. The Doctor also completed an assessment indicating her pain was profound, intractable, and virtually incapacitating, that physical activity increased her pain to the level of requiring bed rest or medication, and that medication would severely limit her ability to perform "the most simple everyday tasks;" the pain was reasonable for her medical condition and could be expected to prevent her from maintaining

---

**Main Document Only.** *Physician's Desk Reference* 2517 (62nd ed. 2008).

[8] *Norco* is an opioid pain medication used to relieve moderate to severe pain. *See* http://www.drugs.com/norco.html

[9] **Error! Main Document Only.** *Effexor* is used "for the treatment of depression. *Physician's Desk Reference* 3037 (52nd ed. 1998).

attention, concentration, or pace for periods of at least two hours (Tr. 399).

This concludes the Court's summary of the evidence.

Plaintiff claims she meets the requirements of Listing 12.05C.  The introductory notes to Section 12.05 state that "[i]ntellectual disability refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2016).  Subsection C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C.

Although the regulations require Plaintiff demonstrate she suffered "deficits in adaptive behavior" before turning twenty-two, 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05, the Eleventh Circuit Court of Appeals, in *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001), held "that there is a presumption that mental retardation is a condition that remains constant throughout life."  The *Hodges* Court further held "that a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age of twenty-two,

8

when she presented evidence of low IQ test results after the age of twenty-two." *Hodges*, 276 F.3d at 1266. However, the presumption is rebuttable. *Hodges*, 276 F.3d at 1267.

Johnson points to Psychologist Blanton's 2011 examination when Listing-level scores on the WAIS-IV, including a Full Scale IQ score of 62, were reported as evidence of mild mental retardation (Doc. 16, pp. 12-13; *cf.* Tr. 322). In examination notes eighteen months later, the Psychologist stated the earlier test results still seemed valid, though no more testing was conducted (Tr. 368). Plaintiff also references the ALJ's finding that her obesity was a severe impairment (*see* Tr. 31).

The Court finds that the two prongs of Listing 12.05C have been satisfied. Johnson's IQ scores meet the first prong and stand unrebutted. Furthermore, the Eleventh Circuit Court of Appeals, in *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985), held that the second prong of 12.05C is met when a finding is made that a claimant has an additional severe impairment as "significant work-related limitation of function" "involves something more than 'minimal' but less than 'severe'"). The ALJ's finding of obesity satisfies that prong.

In her determination, the ALJ found Johnson had no combination of impairments that met any Listing requirements (Tr. 32); she did not discuss the requirements of any Listing. In sifting the evidence, the ALJ summarized Blanton's second

9

exam, but did not report the first visit or the IQ scores therein (Tr. 34).[10] The ALJ went on to find Blanton's mental retardation diagnosis was not credible because Johnson had stated she completed high school, in a non-special education curriculum, and a month of college before quitting to go work to help her mother (Tr. 36; *cf.* Tr. 251, *but see* Tr. 48-51).

Sunshine High School records show Johnson received twenty credits over four and one-half years, repeating eleventh grade and going a single semester in twelfth grade, and graduated though she did not pass the reading or math portions of the graduate exam (Tr. 278, 281-82). Plaintiff testified records were incorrect in stating that she was not in special education classes (Tr. 51).[11]

The Government acknowledges the ALJ did not specifically find that Johnson did not meet Listing 12.05C, though asserting that she implicitly did so (Doc. 17, p. 11). Defendant argues that this implicit conclusion was reached in the ALJ's rejection of Blanton's mental retardation finding and in pointing out inconsistencies in Plaintiff's testimony (Doc. 17, p. 9-10).

The undersigned notes that the ALJ is required to "state specifically the weight accorded to each item of evidence and

---

[10]The ALJ stated the second examination was at Plaintiff's Attorney's referral (Tr. 32), but Blanton's exam reports the Social Security Department made the referral (Tr. 367; *see also* Tr. 366).
[11]Though Defendant argues otherwise (*see* Doc. 17, p. 9), Johnson clearly indicated, in testimony, that she was in special education classes (Tr. 50-51).

10

why he reached that decision." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  Furthermore, social security regulations provide the following instruction:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p (Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims:  Assessing the Credibility of an Individual's Statements).

The Court notes that while the Government points to various evidence as reasons to believe that the ALJ rejected Blanton's finding that she had suffered deficits in adaptive functioning, the ALJ herself did not make any such finding.  Furthermore, the ALJ made no credibility findings as to Johnson's statements.  Though she set out inconsistent testimony and statements made by Plaintiff, the ALJ gave no indication what was credited or rejected.

11

In summary, the ALJ, in her determination, did not do the following:  (1) discuss IQ scores providing Listing requirement evidence of mental retardation; (2) make a specific finding as to whether or not Plaintiff had suffered deficits in adaptive functioning; and (3) make a credibility finding regarding Johnson's testimony and statements concerning her impairments.  As such, the Court cannot find that the ALJ's conclusions are supported by substantial evidence.[12]

In reaching this decision, the Court notes that it is not finding that Johnson is mentally retarded.  The ALJ may be correct in her conclusions.  However, the decision entered does not provide the necessary support to affirm her conclusions.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence.  Therefore, it is **ORDERED** that the action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, the taking of additional evidence as to Plaintiff's mental abilities.  Judgment will be entered by separate Order.

DONE this 18th day of November, 2016.

                                   s/BERT W. MILLING, JR.
                                   UNITED STATES MAGISTRATE JUDGE

---

[12] Because the Court has reached this decision, it is unnecessary to address Johnson's three other claims.